## Williams Township's Appeal.

Argued December 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Russell C. Mauch,* of *Mauch & Goodman,* with him *George C. Laub,* for appellant.

*E. S. McCluskey,* City Solicitor, for appellee.

OPINION BY PARKER, J., March 2, 1940:

This is a proceeding under the Declaratory Judgment Act brought to determine the validity of an ordinance of the city of Easton annexing to that city a tract of land in Williams Township. The court below upheld the validity of the ordinance and the township has appealed to this court.

The city of Easton, on September 10, 1918, acquired by purchase a tract of one hundred acres situated outside the city in the adjoining township of Williams, for use as a public park, and has continuously used the land for that purpose. The park does not adjoin the territorial limits of the city, being one mile distant therefrom at the nearest points. The city, until 1935, paid to the township the taxes assessed on the park. On June 21, 1923, the city undertook by ordinance to annex the park to the city. The validity of the ordinance is questioned on the ground that no part of the park touches the territorial limits of the city.

Section 1 of the Act of June 26, 1895, P. L. 349, as finally amended by Act of May 6, 1909, P. L. 459, provides in part as follows: "That it shall be lawful for, and the right is hereby conferred upon, the cities of this Commonwealth to purchase, acquire, enter upon, take, use, and appropriate private property for the purpose of making, enlarging, extending, and maintaining public parks, within or without the corporate limits of such cities, and to enter upon, take, use, and appropriate any poorhouse properties held for the accommodation of the poor of any districts, wards, or townships, within the corporate limits of such cities, for the purpose of making, enlarging, extending, and maintaining such public parks, whenever the councils thereof shall by ordinance or joint resolution determine thereon: Provided, That where said private property is outside of the city, it may be annexed thereto by ordinance of such city." The Act of 1895, as amended by the Act of July 15, 1897, P. L. 273 (53 PS §1559, et seq.), also

provides for appointment of viewers to assess damages where they cannot be agreed upon.[1]

"Municipal corporations are creatures of the State, created, governed and abolished at its will. They are subordinate governmental agencies established for local convenience and in pursuance of public policy. The authority of the legislature over all their civil, political, or governmental powers is, in the nature of things, supreme, save as limited by the federal Constitution or that of the Commonwealth": *Shirk v. Lancaster City,* 313 Pa. 158, 162, 169 A. 557.

It was within the power of the legislature to authorize a city to make a tract of land outside its territorial limits and not touching the boundary of the city a part of the municipality. In *Mill Creek Township Annexation,* 74 Pa. Superior Ct. 275, inhabitants of that township sought to annex a part of it to the city of Erie. The effect of the proceeding was to leave two portions of the township separate and apart from each other. This the lower court held was unlawful, that the township could not be divided into parts that were separate and apart, that the proceedings were "in derogation of the common law" and, in short, "that the separation of the township into parts that are not contiguous is inherently unlawful." In rejecting that argument and reversing the court below, we said (p. 278) : "We may start in with the proposition which has been constantly recognized by the courts that there is nothing sacred about the delimitation of the political divisions of a state. That such divisions are mere agencies to carry out the functions of government and are subject to the

---

[1] The acquisition of land by third class cities for park purposes is now provided for by the Third Class City Law of 1931 (53 PS §12198-3703). Where land outside the city is so taken, proceedings to annex are under the general provisions of the act providing for annexation, where the land to be annexed must be contiguous.

control of the legislature, who may enlarge their territorial extent, or change their functions, or modify their internal arrangements, or destroy their very existence 'by the mere breath of arbitrary decision.' " We held that the legislative intent being clear in that respect its command must be obeyed, notwithstanding the fact that it resulted in separating the township into two separate and non-contiguous parts.

The solution of the problem therefore depends upon a determination of the legislative intent as disclosed by the statute. While the legislature authorized every city to acquire land for park purposes within or without the corporate limits, it added a proviso, that where property so taken is outside the city it might be annexed thereto by ordinance. The verb "to annex" is derived from the Latin *annectere*, meaning to tie or bind to, and is defined as follows: "To join (one thing to another), as by physical means; to attach; often, specifically, to subjoin": Webster's New International Dictionary. In the law, we speak of fixtures being annexed to the freehold, meaning thereby an actual physical attachment. If the owner of a farm purchases ten acres adjoining and then uses the two parcels together we would, in common parlance, say that he had annexed the ten acres to the farm; but if he purchased ten acres located at a distance from the farm, we would not say that it was annexed to the farm even though it might be used in connection with it. It would seem that the legislature did not intend to say that land could be annexed to the city that is not capable of annexation. "The Legislature does not intend a result that is absurd, impossible of execution or unreasonable": Statutory Construction Act of May 28, 1937, P. L. 1019, §52 (46 PS §552).

If there is an actual ambiguity and the words are not explicit, we may consider, among other matters, the object to be attained and the consequences of a particular interpretation: §51 (46 PS §551). It is not un-

reasonable to assume that, in these days when motor cars, which take us from place to place rapidly, cheaply, and conveniently, are so generally used and there is a call to residents of cities from the open spaces and woods, the legislature should have thought it proper to permit cities to acquire parks or playgrounds outside and some distance from the boundaries of the municipality. It is clear that the legislature intended so to do and as an incident to such right it thought proper to permit annexation when it was possible. On the other hand, it would seem to be severely straining the meaning of the words "to annex" to hold that because the legislature permitted annexation it thereby intended to include situations where the park was not contiguous to the city and perhaps might be a considerable distance from its boundaries. If we limit the meaning of the act so that annexation is permitted only when the park actually adjoins the city, we do not do violence to the meaning of the word "annex" and we accomplish a reasonable result.

The construction contended for by the city and adopted by the court below is not in harmony with a policy disclosed by the legislature in treating kindred matters. A reference to the Act of April 28, 1903, P. L. 332, as amended by Act of April 19, 1905, P. L. 216 (53 PS §91), providing generally for the annexation of territory to cities, shows that the legislature limited annexation to contiguous territory. The present Third Class City Act contains the same limitation. Our conclusion is that the legislature intended to permit a city to acquire lands for park purposes beyond the boundaries of the municipality and not contiguous and also intended to permit the annexation of such parks only when the park adjoins the city.

It is also suggested by the city that the township is estopped from questioning the validity of the ordinance by reason of the fact that proceedings were instituted to which the township was made a party to have an

adjustment made of the township indebtedness. The answer to that contention is that the court had no jurisdiction of the subject matter involved in that proceeding for it was based upon an invalid ordinance and jurisdiction by the court of the subject matter in dispute may not be waived.

The declaration and decree of the court below is reversed and it is directed that an order be entered not inconsistent with this opinion, the city to pay the costs.